FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

FEB 21 2006

MATTHEW J. DYKMAN
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

PATRICK DeHERRERA,

    Petitioner,

v.

                                   Civ. No. 03-1020 MCA/RLP

TIM LeMASTER,

    Respondent.

## MAGISTRATE JUDGES THIRD PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

1.     This is a proceeding brought pursuant to 28 U.S.C. § 2254. Petitioner is currently serving a term of life imprisonment pursuant to the Judgment, Sentence, and Commitment entered in *State v. DeHerrera*, CR. 00-00570, in the Second Judicial District Court (County of Bernalillo), State of New Mexico, entered on November 8, 2000. Answer [Doc. 12], Exhibit B. Pursuant to a jury verdict, Petitioner was convicted of several crimes including first degree felony murder. Exhibit B.

2.     This is the Third Proposed Findings and Recommended Disposition. *See* Doc. Nos. 24 & 39. In sum, there were issues concerning the one-year limitation period set forth in § 2244(d)(1), exhaustion, and procedural default. These issues were previously briefed and Petitioner voluntarily dismissed his unexhausted claims. *See* Order from the district court reinstating the petition [Doc. 34]. The parties have agreed that three issues

---

[1] Within ten (10) days after a party is served with a copy of this Proposed Findings and Recommended Disposition (hereinafter "Proposed Findings") that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections in the United States District Court to the Proposed Findings. A party must file any objections within the ten-day period allowed if that party wants to have appellate review of the Proposed Findings. If no objections are filed, no appellate review will be allowed.



remain for the court to resolve: (1) whether the state court incorrectly denied Petitioner's Motion to Suppress by its holding that Petitioner had voluntarily waived his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966); (2) whether the state court violated Petitioner's Confrontation Clause rights by limiting his cross-examination of a witness; and (3) cumulative error.

3. The following summary of the facts of the case is taken from Petitioner's Memorandum Brief [Doc. 51]. Petitioner and two friends, Beverly Young and Toby Chavez, went for a ride in Chavez's car. Chavez drove and Young was in the back seat. Because of the loudness of the radio, Young could not hear the conversation between Chavez and Petitioner, but saw Chavez pass a gun to Petitioner who fired it out the window into the air. The trio pulled into a truck stop where a man was pumping gas. Chavez and Petitioner exited the vehicle. Chavez approached the victim, who sprayed Chavez with gasoline; Young testified that she then saw a flash. Chavez and Petitioner re-entered the vehicle, Chavez smelling of gasoline and saying he had shot the man and thought he was dead. Doc. 51 at 2-3.

4. Phixay Detvongsa was at the truck stop when the shooting occurred. He testified at trial that two men approached the victim, who was asked for his car keys and cash. The victim sprayed that individual with gasoline. That man shot the victim. Detvongsa got a partial license plate number which he gave to police. Because Detvongsa had several outstanding warrants against him, he initially gave police a false name. *Id.* at 4-5. He allegedly gave conflicting stories to the police (that he saw the entire incident) and to his girlfriend Nina Locson (that he was in his car and didn't see anything). *Id.* at 5.

2

5. Habeas relief may only be granted if the state court's decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or if it constitutes "an unreasonable determination of the facts in light of the evidence presented at the State court proceeding. 28 U.S.C. § 2254(d); see Hamilton v. Mullin, -- F.3d --, 2006 WL 165011, * 2 (10th Cir. 2006). Further "'a federal habeas court may not issue the writ simply because [a state court] decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Id. (quoting Williams v. Taylor, 529 U.S. 362, 411 (2000).

6. Petitioner argues that Miranda specifically holds that "any evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege." Miranda, 384 U.S. at 476. In support of his claim, Petitioner argues that the detectives "threatened, tricked, or cajoled" him by (i) falsely representing that Beverly Young was scared of him; (ii) by promising leniency to Petitioner if he gave a statement; and (iii) suggesting that he might be subject to the death penalty if he didn't give a statement. A review of the taped interview between the detectives and Petitioner does not support this contention.

7. Petitioner was told by the detectives to listen before he talked. They said they didn't think he was the shooter, and said they might be able to help him out because they might have witnesses who would testify he wasn't the shooter. RP, State's Exhibit 22A at pp. 3-4. The detective indicated this "could be a death penalty case," and then added, "you know if you didn't do it, there's no reason you're going to prison." Id. at 4.

3

Petitioner denied any knowledge of the murder and said he didn't know why his name came up. *Id.* He was read his rights shortly after those statements. *Id.* at 5-6. He said he understood his rights. *Id.*

8. After denying all knowledge of the events in question, Petitioner was told by the detective: "I can't make any promises to you. I can't sit here and tell you, you tell me exactly what happened and who the guy was that shot him and I'm gonna let you go. I can't tell you that." *Id.* at 26. The detective then said, "But you also know that I can talk to the ADA's office . . . and tell 'em that you were actually cooperative." *Id.* The detective then reiterated that he didn't think Petitioner was the shooter, that he didn't realize what was going on until it was too late. *Id.* at 27. Petitioner denied even knowing what the detective was talking about. *Id.* at 27-28. Petitioner indicated that if Beverly were scared, that had nothing to do with him: "I wasn't there. I was not there." *Id.* at 32.

9. The New Mexico Supreme Court (NMSC) held that the foregoing conduct of the detectives was neither threatening or coercive, and "were not improper and did not render Defendant's statement involuntary." Exhibit HH at 3. This court agrees. Nothing in the record indicates overreaching on the part of the detectives or that Petitioner did not understand his rights under *Miranda*. He stated he understood his rights, ignored all of the detective's attempts at questioning, and steadfastly denied any knowledge of, or involvement in, the murder. There is simply nothing in the record that evidences police coercion, trickery or psychological pressure; thus, the NMSC's finding that Petitioner's waiver of his rights was voluntary is neither contrary to, or an unreasonable application of, United States Supreme Court precedent. *Williams, supra.*

4

10. Petitioner's final argument is that the court erred in limiting cross-examination of Detvongsa and thereby violated his rights under the Confrontation Clause:

> [T]he judge's limitation of cross-examination prevented the jury from having sufficient information to make a discriminating appraisal of Detvongsa's credibility. The trial court incorrectly prohibited DeHerrera from showing the jury Detvongsa's motivation to color his testimony favorably to the state in order to facilitate an advantageous outcome to the charges and potential charges he faced. A witness facing a DWI charge with an outstanding felony warrant, which is the extent of what the defense was permitted to establish in its cross-examination of Detvongsa, is clearly less likely to be biased than a witness facing DWI and theft charges with outstanding warrants for attempted murder, stolen vehicles, and failures to appear, which was Detvongsa's actual situation.

Petitioner's Memorandum Brief at 18.

11. Petitioner argues that Detvongsa's credibility was critical to his defense because of the two stories Detvongsa had relayed: one, to the police, that he witnessed the shooting and two, to his girlfriend, that he had not. *Id.* at 18-19. Thus, being denied the opportunity to show bias effectively limited Petitioner's defense.

12. "When considering a defendant's challenge to limitations on cross-examination, we determine whether the jury had sufficient information to make a discriminating appraisal of the witness' motives and bias." *United States v. Geames*, 427 F.3d 1333, 1338 (10th Cir. 2005) (internal quotation marks and citation omitted). If, under appropriate cross-examination concerning bias, the jury would have received a "significantly different impression of the witnesses' credibility," then the defendant's Confrontation Clause rights have been violated. *Id.* (internal quotation marks and citation omitted).

13. In its Opinion, the NMSC addressed Petitioner's contentions. First, the court noted that Petitioner was allowed to investigate further into Detvongsa's outstanding DWI warrant, but counsel decided to move on. Exhibit HH at 8. The parties had entered into a stipulation concerning the other crimes and the trial court merely enforced that stipulation. *Id.* As to the prior inconsistent statement, the court indicated that the trial judge had been incorrect not to let counsel impeach Detvongsa with this testimony, but noted that the information came in through Detvongsa's girlfriend and so was put before the jury. *Id.* at 8-9. The court noted that Detvongsa was thoroughly cross-examined by counsel and that most of his testimony was cumulative. *Id.*

14. The foregoing analysis by the NMSC is neither contrary to, nor an unreasonable application of, United States Supreme Court precedent. *Williams, supra.* There is nothing in the record to indicate that the jury would have had a "significantly different impression" of Detvongsa had counsel questioned him about his prior inconsistent statement.

15. Because Petitioner is not entitled to relief on either his *Miranda* or Confrontation Clause claim, the court does not address his argument concerning cumulative error.

## RECOMMENDED DISPOSITION

I recommend that the application for writ of habeas corpus be denied and this case be dismissed with prejudice.

Richard L. Puglisi
United States Magistrate Judge